# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF IOWA

| | |
|---|---|
| IN RE: | ) |
| | )     Chapter 12 |
| LANCE LEE MEYER, | ) |
| | )     Bankruptcy No. 14-01484 |
| Debtor. | ) |

## RULING ON OBJECTION TO CLAIM NO. 9

Debtor's Objection to Claim No. 9 filed by Wanda Jean Meyer as Trustee came on for trial in Mason City, IA on October 19, 2016. Larry Eide and Bruce Toenjes appeared for Debtor Lance Lee Meyer ("Debtor"). Michael Mallaney appeared for Wanda Jean Meyer as Trustee of land that Debtor rented ("Land Trustee"). The Court heard testimony and received exhibits. The Court took the matter under advisement. The parties filed briefs. This is a core proceeding under 28 U.S.C. § 157(b)(2)(C).

## STATEMENT OF THE CASE

Debtor is a farmer. Under an oral lease, Debtor rented farmland from several family trusts that Land Trustee administers. Debtor farmed the trust land from 2002–2012. Debtor filed bankruptcy. Land Trustee filed a claim for 2012 rent. Debtor objected. Debtor argues that he has claims for improvements to trust-owned facilities and repairs to trust-owned equipment that offset Land Trustee's claim. Land Trustee argues that the lease did not include the use of the equipment

and facilities and that Debtor's claims are barred by the statute of limitations. The Court rejects Land Trustee's arguments and sustains Debtor's objection.

## FINDINGS OF FACT

Debtor grew up on his family's farm. In 2002, his father, Merlin Meyer, retired from farming. At that point, Debtor, along with his brother Mitch Meyer, took over the farming operation. Land Trustee is Debtor's mother.

The farmland that Debtor and Mitch farmed is owned by one of three family trusts: the Wanda Jean Meyer Generation Skipping Trust, the Merlin Meyer Trust, or the Merlin and Jean Meyer Revocable Trust. Land Trustee administers these trusts. The trusts own farmland in Franklin and Hardin County, facilities on that farmland, and farming equipment. Which trust owns what property was not the subject of testimony or evidence and is not relevant to the disposition of this case. The Court will refer to the trusts collectively as "the land trust."

In 2002, Debtor and Mitch entered into an oral lease agreement to lease trust-owned farmland ("the lease"). This dispute is about the terms of that oral lease and whether Debtor has valid reimbursement claims for repairs and improvements he made to trust property based on that lease.

In 2009, Debtor and Mitch decided to split up the farming operation. The split determined who would farm what ground. They decided that Mitch would farm some ground and that Debtor would farm other ground. This split did not

2

change the terms of the lease or any other arrangements between Debtor and the land trust. The split only affected Debtor's and Mitch's relationship.

After the split, Debtor continued farming trust-owned land through 2012. Debtor testified that he did not know whether the lease agreement would be renewed for 2013 until he saw someone else using equipment in the fields. It then became clear to him that he would not be farming the trust-owned ground. Debtor testified that negotiations were ongoing until that time.

Debtor filed bankruptcy in 2014. Land Trustee filed a claim for the 2012 farm rent. Debtor farmed two trust-owned plots in 2012: one 67 acres and the other 140 acres. Debtor paid about $130 per acre under the oral lease. Debtor does not dispute that he owes $28,152 in rent for 2012 on the trust land.

Debtor objects to Land Trustee's claim. Debtor argues that he has claims that offset Land Trustee's claim. Debtor testified that the lease included not only the farm ground, but also the facilities and farm equipment. Under the lease, the trust would reimburse him for repairs to equipment and improvements to facilities. He has paid for such repairs and improvements but, since around 2008, he has not been reimbursed for those expenses. Debtor claims that the trust owes him $34,610.90 for improvements he made to trust buildings and repairs he made to trust equipment. Debtor believes that his claim against the land trust for repairs and improvements offsets the entire rent claim.

Debtor testified that, while he was still farming with his brother Mitch, they used the farm equipment. Debtor testified that they would pay for any repairs that were needed on the land trust farm equipment and then the land trust would reimburse them for the cost of the repairs. This was the practice starting in 2002 when he and Mitch started farming under the lease. The split in 2009 did not affect this arrangement. Around the time Merlin Meyer died, the land trust stopped reimbursing him for these repairs and improvements.

At trial, Debtor submitted an accounting of all of the repairs and improvements to trust property that form the basis of his setoff claim. Debtor submitted check images or invoices for the repairs and improvements that he paid for. These repairs included an engine overhaul on a John Deere 4620 tractor and a steering column replacement on another tractor. The check images show that he paid for these repairs. These kinds of repairs and equipment expenses were not just for one crop year—they would last and be used and have value for many years. From 2002 until around 2009, the land trust reimbursed him for these kind of major capital repairs without incident.

Debtor also submitted a sale listing for the land trust's John Deere 4620. The sale listing mentions the engine overhaul that Debtor paid for. That engine overhaul increased the value of the tractor by "close to $10,000." Debtor did not receive reimbursement for the cost of the engine overhaul.

Debtor also made improvements to a trust-owned machine shed. He improved this shed into a machine shop by hanging insulation. Debtor fastened insulation to ready-made flooring and then attached insulation to the walls of the shed. Debtor worked on this along with help from friends and hired hands. It was Merlin Meyer's idea to improve the shed in this way. Merlin Meyer had already started improvements on that whole acreage. This project was a part of that series of improvements. Originally Debtor and Merlin planned to complete the work together, but around the time they were going to begin work, Merlin Meyer's health began deteriorating. He was unable to assist.

Although Merlin Meyer did not complete the work himself, he and his wife, Wanda Jean, now the Land Trustee, went to Menards in Waterloo to purchase supplies for the insulation project. They paid for the first batch of materials to improve the shed. Debtor submitted an image of the check that they used to pay for those materials. Merlin Meyer later told Debtor to finish the project and assured Debtor that he would be reimbursed. Land Trustee also assured him that he would be reimbursed.

Debtor pointed to check 3733, for $10.19, to Theisens as an example to explain how he could link this check, and others like it, to building improvement projects. All such expenses are listed under his accounting as "Building Improvements." He would travel to local vendors to purchase materials for all

building improvement projects. Debtor testified that he would purchase from local vendors only what was needed at a given time. He did not buy materials in large quantities. He wrote these checks during the time he was working on the shed. He had no other reason to spend money at those vendors other than for shed work.

Debtor paid all of the checks and invoices he submitted to the Court. Each line item on his accounting is for the improvement or repair of trust property. Debtor has not been reimbursed for any of these expenses.

Another factor is the dispute that arose about the administration of the land trust in 2012. Debtor submitted a letter dated November 21, 2012 into evidence. That letter was from Debtor's counsel to Land Trustee's counsel. It asked for reimbursement based on Debtor's expenditures for repairs to the tractors. Debtor asked for $15,340.00 for the engine overhaul and steering column replacement only. Debtor testified that the letter did not ask for the entire amount he believed he was owed. Debtor was trying to show that he was willing to negotiate. Debtor also asked for an accounting of the trust and supporting documentation.

On March 24, 2014, Debtor filed a petition in Hardin County for an accounting of the trust. Land Trustee filed an answer asserting a claim for the unpaid 2012 rent. Debtor filed a reply asserting his right of setoff. Land Trustee's claim and Debtor's setoff claim in the accounting action were stayed by the filing

of this bankruptcy case. The trust accounting action, which did not affect any property of the bankruptcy, continued. As of the time of trial, it was still pending.

Debtor also submitted checks that Land Trustee wrote to Mitch Meyer in 2010 and 2011. One of these checks says "roof repair" in the memo line. A second check says "tractor" in the memo line. These checks were reimbursement to Mitch Meyer for improvements and repairs to trust property. When Land Trustee wrote these reimbursement checks, Mitch and Debtor were operating under the same lease agreement.

Debtor testified that, even though these are checks from Wanda Jean Meyer to Mitch Meyer (that is, they don't say that they are from Wanda Jean Meyer as Land Trustee), they are nevertheless reimbursement for repairs and improvements to trust property. Because the checks were drawn on a revocable trust account, Debtor testified, Land Trustee could do what she wanted with that money.

Starting in 2009, Debtor began asking to be reimbursed for the repairs and improvements he made to trust property. Sometime in 2010, Debtor and Land Trustee's relationship broke down. They have not spoken to one another since. Debtor testified that he continued to seek reimbursement through attorney communications. Debtor testified that Land Trustee has visited the farm and seen the improvements to the buildings.

Land Trustee testified that the lease that Debtor and Mitch entered into with the land trust was for the land and the buildings on that land only. She asserted that although Debtor and Mitch could use the equipment, it was "not really" a part of the lease. She expected them to ask permission before using the equipment. Land Trustee testified that Debtor had simply helped himself to the equipment when he needed it. She claimed that, before this bankruptcy case began, Debtor had not presented her with the bills for which he now seeks reimbursement. Land Trustee admitted that she has not talked to Debtor since 2010.

In response to Land Trustee's testimony in this trial, Debtor submitted a transcript of Land Trustee's deposition taken before this case. In that deposition, Land Trustee gave the following answers:

> Answer: If they wanted to use the bins, they were allowed to.
> Question: Same with the dryer?
> A: Yes.
> Q: Same with the shop?
> A: Well yeah if there was something, mhm.
> Q: And same with the tools and the equipment in the shop?
> A: Mhm.
> Q: You have to answer out loud.
> A: Yes.

Land Trustee admitted that this was her testimony at the deposition.

## DISCUSSION

Debtor objects to Land Trustee's full claim for 2012 farm rent. Debtor argues that his claims against the land trust offset the entirety of the land trust's

8

claim. Land Trustee disagrees. She argues that Debtor's claims are barred by the statute of limitations and that the terms of the lease do not provide for such reimbursement. The Court will first address whether Debtor's claims are barred by the statute of limitations. The Court will then address whether Debtor is entitled to the amount he claims, whether he has a right to setoff Land Trustee's claim, and whether that right to setoff is properly the basis for an objection to her claim.

### I.     Statute of Limitations

Land Trustee argues that Debtor's claims for reimbursement are barred by the five-year statute of limitations. Iowa Code § 614.1(4). She points out that Debtor filed his objection to her claim on June 28, 2016. She argues that the statute of limitations bars any claims that arose more than five years before then.

Debtor disagrees. Debtor argues that he asked for reimbursement before the bankruptcy case began—as early as November 2012 in a letter to Land Trustee's counsel. At a minimum, he asserts he made a request for full reimbursement on April 21, 2015, when he filed his reply in the state court action. Debtor admits that, if the 2015 date is the starting point, some part of his claim could theoretically fall outside the five-year statute of limitations. Debtor argues, however, that none of his claims are barred by the statute of limitations because Iowa law provides an exception to the statute of limitations for counterclaims pleaded as a defense.

"The basic federal rule in bankruptcy is that state law governs the substance of claims." Raleigh v. Ill. Dep't of Revenue, 530 U.S. 15, 20 (2000) (internal quotation marks omitted). Under Iowa law, a lease is a contract. Alta Vista Props., LLC v. Mauer Vision Ctr., PC, 855 N.W.2d 722, 727 (Iowa 2014). "Because leases are contracts . . . ordinary contract principles apply." Walsh v. Nelson, 622 N.W.2d 499, 503 (Iowa 2001).

As noted, the Iowa statute of limitations for unwritten contracts is five years. Iowa Code § 614.1(4). This limitation period begins to run when the cause of action "accrues." Iowa Code § 614.1. "It is well settled that no cause of action accrues under Iowa law until the wrongful act produces loss or damage to the claimant." Bob McKiness Excavating & Grading, Inc. v. Morton Bldgs., Inc., 507 N.W.2d 405, 408 (Iowa 1993). "In the case of a contract dispute, that right accrues and the limitations period begins running upon breach of the contract." Diggan v. Cycle Sat, Inc., 576 N.W.2d 99, 102 (Iowa 1998).

Even if a claim is barred by the statute of limitations, however, it may be used as a defense:

> A counterclaim may be pleaded as a defense to any cause of action, notwithstanding it is barred by the provisions of this chapter, if it was the property of the party pleading it at the time it became barred, and was not barred at the time the claim sued on originated; but no judgment thereon, except for costs, can be rendered in favor of the party so pleading it.

Iowa Code § 614.12.

10

This Court has interpreted this Iowa Code section to be a codification of the common law doctrine of recoupment. Siouxland Beef Processing Co. v. Knight (In re Siouxland Beef Processing Co.), 55 B.R. 95, 101 (Bankr. N.D. Iowa 1985) ("Advancing a counterclaim on the theory of recoupment does not, however, permit the defendant to seek nor obtain affirmative relief. It may be asserted only to the extent it defeats or diminishes the plaintiff's recovery."). The Iowa Supreme Court has stated that this section "allows a counterclaim, otherwise barred by the passage of time, to be urged in defense unless barred when the plaintiff's claim originated." Prochelo v. Prochelo, 346 N.W.2d 527, 530 (Iowa 1984).

Although the majority of Debtor's reimbursement claims arose less than 5 years before he filed his reply in the state court action (in which he asserted his claims), some arose from work completed more than 5 years before that filing. Nevertheless, the claims that fall outside the five-year window are not barred in this case by the statute of limitations. These claims belonged to Debtor, were not barred when Land Trustee's 2012 rent claim arose, and Debtor is asserting them as a defense to Land Trustee's 2012 rent claim. Thus, Debtor's claims fall under Iowa Code section 614.12 and are not barred by the statute of limitations.

## II. Terms of the Lease

Debtor argues that the terms of the oral farmland lease provided for his use of the facilities and equipment and contemplated reimbursement for expenses

incurred repairing and improving the land trust property.  Debtor argues that the course of dealing between him and Land Trustee shows that the lease contemplated such use and reimbursement.  Debtor argues that Land Trustee's reimbursement to Mitch Meyer also shows that the lease provided for such reimbursement.

Land Trustee argues that Debtor is not entitled to reimbursement.  Land Trustee argues that Debtor's claims are vague and ambiguous and that the lease was only for the land and facilities.  She argues that Debtor was allowed to use the equipment only with her permission.  She argues that Debtor simply helped himself to the equipment and that the lease does not entitle Debtor to reimbursement.  The Court rejects Land Trustee's arguments.

Under Iowa law, "[w]hether an oral contract existed, what its terms were, and whether it was breached ordinarily are questions for the trier of fact." Dallenbach v. MAPCO Gas Prod., Inc., 459 N.W.2d 483, 486 (Iowa 1990); Emp. Benefits Plus, Inc. v. Des Moines Gen. Hosp., 535 N.W.2d 149, 153 (Iowa Ct. App. 1995).  Where the existence of an oral contract is not in dispute, testimony is sufficient to establish the terms of a lease.  Kolkman v. Roth, No. 01-0945, 2002 WL 1429524, at *3 (Iowa Ct. App. July 3, 2002), aff'd, 656 N.W.2d 148 (Iowa 2003).  Course of dealings is also relevant to determining fact questions about contact disputes.  See Emp. Benefits Plus, Inc., 535 N.W.2d at 153.

The parties do not dispute the existence of a contract. As a result, the statute of frauds does not apply and oral evidence about the terms of the contract are admissible. Kolkman, 2002 WL 1429524, at *3. ("[D]efendant admitted there was some form of lease, though she disagreed on its term, that this admission was sufficient to render testimony of the lease admissible as an exception to the statute of frauds."). The parties do, however, dispute the terms of the lease. Thus, the Court must decide a fact question: whether use of the farm equipment and reimbursement for repairs and improvements to property was a part of the lease.

After reviewing the record, the Court finds that the lease included use of the farm equipment, facilities, and reimbursement for repairs and improvements to the equipment and facilities. In particular, the Court finds Debtor's testimony credible. Debtor testified that the lease included use of the equipment and reimbursement for his costs to repair and improve the trust-owned equipment and facilities. Debtor testified that the course of dealings between the parties showed this. He also testified about Mitch Meyer's dealings with Land Trustee, which included the kind of reimbursement Debtor seeks here. The tractor sale listing, check images, and checks from Land Trustee to Mitch Meyer, support Debtor's testimony.

The Court does not find Land Trustee's testimony credible. Her testimony that the lease did "not really" include the use of the equipment, but that Debtor

13

could use the equipment if he asked permission, is not persuasive. This testimony conflicts with her deposition testimony that Debtor and Mitch were allowed to use "the tools and the equipment in the shop" under the lease. Her testimony also conflicts with the undisputed course of dealing between the parties. Her testimony did not contest or otherwise address Debtor's testimony that, before Merlin Meyer died, Debtor would receive reimbursement for the repairs and improvements he made to land trust property. Her testimony also did not address the checks made out to Mitch Meyer, the tractor sale listing that mentioned the engine overhaul, or the checks used to purchase the first round of materials for the work shed insulation project. This evidence shows that the lease that Debtor and Mitch entered into with Land Trustee included use of the farm equipment, facilities, and reimbursement for repairs and improvements to the equipment and facilities. Land Trustee's denial is simply not credible in light of contrary testimony and evidence.

Moreover, Land Trustee did not dispute that Debtor made the improvements and repairs to trust property. She also did not dispute Debtor's accounting of his expenses for those improvements and repairs. Because the Court has found that the lease included use of the equipment and facilities, as well as reimbursement for repairs and improvements, Debtor properly has claims for reimbursement for the improvements and repairs he made as set forth in his accounting.

14

### III. Setoff

Finally, Debtor is entitled to set off his claims for repair and reimbursement against Land Trustee's claim for 2012 rent. "Setoff is traditionally an equitable doctrine by which a court, upon petition of one party, may reduce or cancel the claim of an adverse party." Taylor v. Farm Bureau Mut. Ins. Co., 759 N.W.2d 2, No. 07-1580, 2008 WL 4525496 at *9 (Iowa Ct. App. Oct. 1, 2008). Iowa law provides that, to establish a right of setoff, "the demands must be mutual and must exist between the same parties, and be of the same grade and nature or due the same capacity or right." In re Marriage of Ballstaedt, 606 N.W.2d 345, 350 (Iowa 2000). In bankruptcy, a right of setoff is "a proper basis for an objection and a proper ground for disallowance of a claim." Union Carbide Corp. v. Viskase Corp. (In re Envirodyne Indus., Inc.), 183 B.R. 812, 819 (Bankr. N.D. Ill. 1995).[1]

Here, it is undisputed that Land Trustee's and Debtor's claims arise out of the same oral lease. The parties and claims are mutual and Debtor has established his right to setoff in the amount of $34,610.90. This exceeds Land Trustee's

---

[1] Although the parties do not raise this issue here, at least one court has ruled that "[a]n objection to claim is the improper outlet for raising a claim of set off." See In re UTEX Commc'ns Corp., 457 B.R. 549, 567 (Bankr. W.D. Tex. 2011). Nevertheless, "the possible procedural defect does not affect this court's ability to decide the debtor's claim objection on the merits." In re Eckerstorfer, 508 B.R. 90, 95 n.3 (Bankr. E.D. Wis. 2014).

$28,152 claim. Debtor's right of setoff is a proper basis for his objection to Land Trustee's claim.

## CONCLUSION

**WHEREFORE**, Debtor's Objection to Proof of Claim No. 9 is SUSTAINED.

Dated and Entered:

January 11, 2017

_____
THAD J. COLLINS
CHIEF BANKRUPTCY JUDGE